# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| DAVID STIDMAN, | ) |
| Petitioner, | ) |
| | ) Case No. 14-3230-CV-S-MDH-P |
| vs. | ) |
| MICHAEL BOWERSOX, | ) |
| Respondent. | ) |

## OPINION AND ORDER DENYING WRIT OF HABEAS CORPUS AND DENYING THE ISSUANCE OF A CERTIFICATE OF APPEALABILITY

Petitioner, a convicted state prisoner currently confined in the South Central Correctional Center in Licking, Missouri, has filed *pro se* a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2006 convictions and sentences for second-degree murder and armed criminal action, which were entered in the Circuit Court of Greene County, Missouri. Petitioner raises one ground of ineffective assistance of trial counsel – that counsel incorrectly advised him to reject the state's plea offer of a 25-year sentence for voluntary manslaughter and that petitioner consequently received a life sentence and a concurrent 50-year sentence due to counsel's erroneous advice. Petitioner's conviction was affirmed on direct appeal (*State v. Stidman*, 259 S.W.3d 96 (Mo. App. 2008)), and the denial of his motion for post-conviction relief filed pursuant to Mo. Sup. Ct. R. 29.15 was upheld on appeal thereof (*Stidman v. State*, No. SD32518, (Mo. App. 2013)).

## FACTUAL BACKGROUND

In affirming the judgment of conviction and sentence of the Circuit Court of Greene County for second-degree murder and armed criminal action, the Missouri Court of Appeals, Southern District, set forth the following facts regarding petitioner's criminal trial:

[Petitioner] was charged by information with murder in the first degree and armed criminal action for killing Robert Harris (Harris) by shooting him seven times in the head. *See* §§ 565.021, 571.015[, RSMo 2000.] Following a jury trial, [petitioner] was convicted of the lesser-included offense of murder in the second degree and armed criminal action. The court imposed concurrent sentences of life in prison and 50 years in prison, respectively, for committing these offenses.

. . . .

[Petitioner] and Jennifer Banks (Banks) were married in March 1998. In January 2004, the couple had three young children who were approximately five years, three years, and one month old. The couple began having marital problems. In the spring of 2004, Banks met Harris at a club and began secretly dating him.

On May 1, 2004, Banks left [petitioner] and began living with Harris. Earlier that day, Banks and [petitioner] had argued, and [petitioner] pushed Banks off some steps from the laundry room into the garage. As [petitioner] approached Banks, she bolted from the garage into her vehicle and drove away.

Harris and Banks lived together until July 13, 2004, when she moved back to [petitioner's] home in order to be with her children. After three days, however, Banks changed her mind and decided to leave again. On July 16, 2004, Banks did not come home after work. She called [petitioner] and said there was no way she could be with him. Banks also said that she was not planning to pursue a relationship with Harris and that she was going to find an apartment and take the children. [Petitioner] told Banks that she was playing games with him, called her names and was very angry and upset.

Banks had called [petitioner] from a pay phone near Harris' apartment. Later, she and Harris were watching a movie in the living room when someone began pounding on the front door. Banks opened the door and saw [petitioner] standing in the doorway, holding a 9mm pistol. Banks recognized the pistol as one that [petitioner] had owned for the past five or six years. Harris was sitting unarmed in a chair. [Petitioner] immediately lifted the gun, cocked it, and rushed at Harris. [Petitioner] jumped on top of Harris and tried to put the gun to his head. The two men struggled, and a shot went off that missed Harris and entered the bedroom door. Both men fell to the floor and continued struggling. A second shot was fired as [petitioner] was on top of Harris. [Petitioner] then stood up and fired two shots into Harris' head. When the gun jammed, [petitioner] cleared the chamber and fired several more shots into Harris' head.

Banks ran into the kitchen. [Petitioner] followed, pointing the gun at her. Banks grabbed for the gun, but [petitioner] yanked it away and said it was

2

not loaded. [Petitioner] grabbed Banks with the other hand and began choking her and swearing at her. She eventually fell to the floor. [Petitioner] stood over her and said, "Look at what you f made me do. Look at what you f made me do. I just killed him and I'm going to jail for the rest of my life."

. . . .

[At trial, petitioner] testified that as he approached the apartment door, he heard moaning inside which he believed was the sound of Banks having sex. [Petitioner] pounded on the door until Banks answered, wearing only a "man's T-shirt." Harris came out of the bedroom, and the two men rushed towards each other. Harris was unarmed. The two men began wrestling and fell to the ground. Shots were fired from [petitioner's] gun while they were on the floor. [Petitioner] admitted that: (1) a live round would have to have been chambered before his pistol would fire; and (2) the trigger on the semi-automatic pistol would have to have been pulled each time a shot was fired. According to [petitioner], no shots were fired after he stood up. He did not realize that he was holding the gun until Banks asked for it and grabbed his hand. [Petitioner] kept the gun, walked out of the apartment and got in the car. As he drove away, he threw the gun out of the car window.

During the instruction conference, defense counsel requested that the court submit the lesser included offenses of voluntary and involuntary manslaughter. Counsel tendered appropriate instructions for that purpose. All of these instructions were refused after the trial court ruled that there was insufficient evidence to support either submission. [Petitioner] was convicted of second-degree murder and armed criminal action.

*State v. Stidman*, 259 S.W. 3d at 98, 98-99, 100-101.

Before the state court findings may be set aside, a federal court must conclude that the state court's findings of fact lack even fair support in the record. *Marshall v. Lonberger*, 459 U.S. 422, 432 (1983). Credibility determinations are left for the state court to decide. *Graham v. Solem*, 728 F.2d 1533, 1540 (8th Cir. en banc), *cert. denied*, 469 U.S. 842 (1984). It is petitioner's burden to establish by clear and convincing evidence that the state court findings are erroneous. 28 U.S.C. § 2254 (e)(1).[1] Because the state court's findings of fact have fair support

---

[1] In a proceeding instituted by an application for writ of habeas corpus by a person in custody pursuant to a judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

3

in the record and because petitioner has failed to establish by clear and convincing evidence that the state court findings are erroneous, the Court defers to and adopts those factual conclusions.

## GROUND 1

In his sole ground for relief, petitioner alleges that trial counsel was ineffective for incorrectly advising him and misinforming him on the prospects of his chosen plea. Petitioner claims his counsel's advice caused him to reject the state's plea offer of a 25-year sentence for voluntary manslaughter and that he consequently received a life sentence and a concurrent 50-year sentence due to counsel's erroneous advice. Doc. No. 1, p. 5(a).

In order for petitioner to successfully assert a claim for ineffective assistance of trial counsel, petitioner must demonstrate that his attorney's performance "fell below an objective standard of reasonableness" and that "the deficient performance" actually prejudiced him. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). This Court, moreover, may not grant habeas relief unless the state appellate court's decision "was contrary to, or an unreasonable application of, the standard articulated by the [United States] Supreme Court in *Strickland*." *Owens v. Dormire*, 198 F.3d 679, 681 (8th Cir. 1999), *cert. denied*, 530 U.S. 1265 (2000).

"A court considering a claim of ineffective assistance of counsel must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance." *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 689). Petitioner must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

In the context of a plea offer that has been rejected because of counsel's deficient performance, petitioner must demonstrate a reasonable probability he would have accepted the

4

earlier plea had he been afforded effective assistance of counsel and a reasonable probability that the prosecutor would have adhered to the agreement and that the court would have accepted it if such discretion was permitted under state law. To establish prejudice, petitioner also must "show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Missouri v. Frye*, 132 S. CT. 1399, 1409 (2102). "[A]n erroneous strategic prediction abou the outcome of a trial is not necessarily deficient performance." *Lafler v. Cooper*, 132 S. Ct. 1376, 1391 (2012).

In his post-conviction proceeding, the motion court denied petitioner's claim of ineffective assistance of counsel, finding petitioner's testimony that he would have accepted the plea offer, but for his counsel's advice, was not credible. Resp. Ex. L, pp. 36-72. The motion court found that counsel had employed a reasonable trial strategy in attempting to obtain an instruction for the lesser included offense of voluntary manslaughter and that the mere fact that the strategy was unsuccessful did not render counsel's strategy unreasonable. Resp. Ex. L, pp. 48, 56-58.

At an evidentiary hearing on his state post-conviction motion, petitioner testified that he was informed by his counsel of the punishment range for each of the charges against him. Counsel also testified that he believed the 25-year plea offer had been too high and that he had been confident the trial judge would give the jury a voluntary manslaughter instruction. Trial counsel further stated he never would have guaranteed a voluntary manslaughter verdict. Resp. Ex. L, pp. 53, 54.

Petitioner appealed, raising this claim, among others, but the Missouri Court of Appeals affirmed the denial of his post-conviction motion. The appellate court properly identified and applied the test set forth in *Strickland*. Resp. Ex. Q, pp. 5-7. The Missouri Court of Appeals

5

ultimately held that petitioner failed to demonstrate that his counsel's performance was deficient. In doing so, it deferred to the motion court's determination that petitioner's testimony was not credible. Resp. Ex Q, p. 8. Petitioner has not demonstrated, by clear and convincing evidence, that the presumptively correct fact findings by the Missouri Court of Appeals are unreasonable.

The Missouri Court of Appeals, Southern District, affirmed the denial of the claims discussed in petitioner's Ground One by stating:

> In his first point, [petitioner] claims he proved trial counsel was ineffective for "erroneously assuring [petitioner] that a voluntary manslaughter instruction would be submitted to the jury." [Petitioner] argues he was prejudiced by this allegedly erroneous advice because it caused him to reject a plea offer for a 25-year sentence for which he is now serving a life sentence. This claim is without merit because [petitioner] failed to prove prejudice.
>
> The following additional facts are relevant to our disposition of this point. During a break in the prosecution's case in chief, the parties held a hearing outside the presence of the jury to discuss [petitioner's] right to testify and the plea negotiations that had occurred in the case. The judge began the hearing by stating the prosecution had previously offered sentences of 25 years on each charge in exchange for [petitioner's] guilty pleas. Trial counsel clarified that under the proposed plea agreement the murder charge would have been reduced from first-degree murder to second-degree murder, [petitioner] would have received a twenty-five year sentence for second-degree murder and a twenty-five year sentence for armed criminal action, and the sentences would have been served concurrently. The plea offer had been withdrawn before trial. The trial judge then questioned [petitioner] directly, and [petitioner] assured the trial court that trial counsel had conveyed the offer to him, and he had sufficient time to talk to trial counsel and co-counsel about the offer.
>
> After [petitioner] had been convicted and sentenced, the trial court questioned [petitioner] regarding his attorney's performance. During that colloquy, [petitioner] stated he had discussed his options with his attorney and did not want to plead guilty pursuant to the offer the prosecution had made.
>
> At the evidentiary hearing on the post-conviction motion, [petitioner] testified trial counsel told him the prosecution's offer involving a 25-year sentence for second-degree murder was too high and that a sentence of 10 years would be more appropriate. [Petitioner] explained trial counsel

assured him that if he went to trial, the trial court would instruct the jury regarding voluntary manslaughter. According to [petitioner], trial counsel also said that if the trial judge did not instruct the jury regarding voluntary manslaughter, the convictions would be reversed on appeal. [Petitioner] stated if trial counsel had not given him that advice he would have accepted 25-year offer and pleaded guilty. On cross-examination, [petitioner] admitted trial counsel never guaranteed him that voluntary manslaughter was the only charge on which he could be convicted. He also admitted trial counsel informed him of the full range of punishment for all the charged crimes, and there were no guarantees about what the jury would decide.

Trial counsel testified he thought the 25-year offer was too high, and he was confident the trial judge would give the jury a voluntary manslaughter instruction. Trial counsel further stated he never would have guaranteed a voluntary manslaughter verdict.

The motion court did not find [petitioner's] testimony credible as to his testimony at the evidentiary hearing that he would have accepted the 25-year plea offer. Thus, the trial court concluded [petitioner] failed to prove him claim. The trial court's findings are not clearly erroneous.
. . . .
The prejudice necessary to succeed on a claim of ineffective assistance of counsel "is shown where 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Bright v. State*, 4 S.W.3d 568, 569 (Mo. App. S.D. 1999) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)). In the context of a rejected plea agreement, satisfying this test requires the movant to show "there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were in fact imposed." *Lafler*, 132 S.Ct. at 1385.

This Court recently addressed a situation similar to the one in the present case in *Noland v. State*, [413] S.W.3d [684], No. SD32430, 2013 WL 5979748 (Mo. App. S.D. Nov. 12, 2013). In *Noland*, the movant claims "he would and could have pleaded to ten years on a lesser change but for the misadvice from his lawyer . . . about punishment." *Noland*, slip op. at 1. At trial, the movant "rejected all plea offers and insisted that he was innocent." *Id*. at 2. At the evidentiary hearing, the movant testified he would have accepted the plea agreement. *Id*. at 5. The motion court found that, in light of the movant's representations at trial, the movant's testimony at the post-conviction evidentiary hearing was not credible. *Id*. This Court affirmed the denial of relief because there was "no reasonable probability

7

> [the movant] would have accepted the plea offer." *Id.*; *see also Peeler v. State*, 750 S.W.2d 687, 691 (Mo. App. E.D. 1988) (holding there was no clear error in denying a claim that trial counsel misled the defendant into rejecting the plea offer where there was no testimony at the evidentiary hearing that the defendant would have accepted the plea offer).
>
> Here, as was the case in *Noland*, [petitioner] failed to meet the first element of the prejudice test enunciated in *Lafler*. [Petitioner] testified he would have accepted the plea agreement if it were not for trial counsel's advice. However, the motion court did not find this testimony credible, and we must defer to that credibility determination. *Noland*, slip op. at 5. Consequently, the motion court did not clearly error in denying the claim. *See id.*

Respondent's Exhibit Q, pp. 2-8

As argued by respondent, petitioner's claim conflicts with his prior statement to the trial court that he voluntarily and knowingly chose to reject the state's plea deal and proceed to trial. Petitioner stated under oath when the trial court questioned him directly after petitioner had been tried and sentenced that he had discussed his options with his attorneys and that it was his decision to go to trial and not to plead guilty. Resp. Ex. A, pp. 748-752. Petitioner also testified to the state trial court that he was made aware of the choices and consequences of this action by his counsel and did not believe that his counsel's conduct was deficient. *Id*. Petitioner has failed to demonstrate why this Court should now disregard his prior declarations. "Solemn declarations in open court carry a strong presumption of verity" and pose "a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Moreover, this Court must give deference to a state court's findings of fact and credibility determinations, which includes determinations made by both the lower and appellate state courts. *Smulls v. Roper*, 535 F. 3d 853, 864-65 (8th Cir. 2008) (en banc), *cert. denied*, 556 U.S. 1168 (2009); *Odem v. Hopkins*, 382 F. 3d 846, 849 (8th Cir. 2004).

8

Because the state courts' determinations were not based upon "unreasonable determination[s] of the facts in light of the evidence presented in the State court proceeding[s]' or "an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1) and (2), Ground 1 will be denied.

## CERTIFICATE OF APPEALABILITY

Under 28 U.S.C. § 2253(c), the Court may issue a certificate of appealability only "where a petitioner has made a substantial showing of the denial of a constitutional right." To satisfy this standard, a petitioner must show that a "reasonable jurist" would find the district court ruling on the constitutional claim(s) "debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 276 (2004). Because petitioner has not met this standard, a certificate of appealability will be denied. *See* 28 U.S.C. § 2254, Rule 11(a).

Accordingly, it is **ORDERED** that

(1) the above-captioned petition for a writ of habeas corpus is denied; and

(2) this case is dismissed with prejudice.

/s/ Douglas Harpool
DOUGLAS HARPOOL
UNITED STATES DISTRICT JUDGE

Springfield, Missouri,

Dated: September 26, 2014.